Van Vorst, J.
The mortgage being overdue was entrusted by the plaintiff to Levinger, an attorney-at-law, for foreclosure. Authorized to foreclose, he could without doubt receive payment. The object of the foreclosure, was to realize the amount of the mortgage ; the attorney could well receive that before as after suit brought. But the attorney could receive money only. He had no authority to receive the notes of the mortgagor, payable at a future day, and in effect extend the payment of the mortgage (Hutchings v. Hunger, 41 N. Y. 158 ; Fellows v. Northrup, 39 Id. 117 ; Beers v. Hendrickson, 45 Id. 665). Nor was the attorney authorized, under his employment to foreclose, to receive a part of the mortgage debt, and postpone the payment of the residue. The foreclosure could be prevented only by a payment of the entire mortgage debt, or a tender of the same.
It is quite clear that Levinger had no authority to take the notes in question, either as payment, or as a promise of payment in the future; and in law, the mortgagor is chargeable with knowledge of the attorney’s want of power to receive the notes. As far as the plaintiff’s rights are concerned, they are not *317 affected, either by the taking of the notes by Levinger, or by anything the defendant did afterwards with respect to their payment.
It was a matter between the mortgagor and Levinger ; and the remedy of the former is against the latter, for any injury he may have sustained. If the defendant would pursue such an irregular method of meeting his obligations, he must abide the consequences of his action.
Upon the trial, I was inclined to think that the payment of the note first due should be allowed on the mortgage. But consideration leads me to a different conclusion. The transaction between the mortgagor and the attorney was in its entirety, as far as the plaintiff is concerned, without authority. Levinger did not represent her legally in taking the notes, or in receiving the money secured by the first note.
Besides, before that note was actually paid, the defalcations of Levinger had come to be publicly known. The plaintiff had heard of them in Philadelphia, and had withdrawn the mortgage from Levinger’s possession, and ended his agency in the matter.*
The plaintiff testifies, that she read in the newspaan account of Levinger’s implication in the frauds on the Savings Bank on December 6. On the 9th, she demanded the mortgage from him; he said it was in his safe, rendering that as an excuse for not then delivering it, and on December 15, she actually received it from him by mail.
She had never authorized Levinger to take notes, and had had no information that he had done so, until after she had placed the mortgage in the hands of her present attorneys for collection.
*318 The defendant testifies that the first note was paid to Levinger about December 17. This was after Levinger’s agency was wholly ended, which was as early as December 9. The payment by the defendant of the second note to Levinger, after he had been notified by the present attorneys that they held the mortgage, leads one to the conclusion that the defendant had made up his mind at all hazards to keep his engagements with Levinger, by paying to him the second note, after actual knowledge that he no longer held the mortgage, and in the hope perhaps, that in this way he could induce Mm to go forward and pay the mortgage. The evidence and reasonable inference therefrom, leads to that conclusion.
The result is, that no payments have been made on the mortgage by the defendant, and there should be judgment of foreclosure and sale.

 “If money he due upon a written security, it is the duty of the debtor, if he pay to an agent, to see that the person to whom he pays it, is in possession of the security.” Dunlap's Poky Agency, 374.